UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 9:15-cv-80773-WJZ

FINEST KNOWN LLC, GOLD AND ENERGY
OPTIONS TRADER, LLC, JAMES DiGEORGIA,
GEOFFREY GARBACZ and QUANTITATIVE
PARTNERS, INC.,

        Plaintiffs / Counterclaim-Defendants,
vs.

WEISS RESEARCH, INC. AND BRAD HOPPMANN,

        Defendants / Counterclaim-Plaintiffs.
_____/

## DEFENDANT, WEISS RESEARCH, INC.'S' MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant/Counterclaim-Plaintiff, Weiss Research Inc. ("Weiss"), by and through its undersigned counsel, pursuant Fed. R. Civ. P. 56, and S.D. Fla. L.R. 56.1, hereby files its Motion for Final Summary Judgment on the remaining claims of the Complaint (Counts I and II) and the Fifth Counterclaim. Along with this Motion, Weiss has submitted a Statement of Material Facts as to which there does not appear to be a genuine issue to be tried.  Weiss also submits herein an incorporated Memorandum of Law.

### INTRODUCTION

Plaintiffs, Finest Known LLC ("Finest Known"), and Gold and Energy Options Trader, LLC ("GEOT") claim to own federally registered trademarks entitled to protection, and allege that Weiss is using infringing marks that violate the Lanham Act.  However, the marks at issue are all undisputedly descriptive, and there no genuine dispute that these descriptive marks have not acquired secondary meaning.  Moreover, the marks used by Weiss are dissimilar and there is no evidence of actual or likelihood of confusion.  In fact, two of the alleged infringing marks were first used in commerce by Weiss.  Therefore, summary judgment should be entered on Count I of the Complaint for trademark infringement, and Count V of the Counterclaim for cancellation of trademarks.

Finest Known and GEOT also allege that their marks are "famous" and sue Weiss for trademark dilution under the Lanham Act.  It is undisputed, however, that the senior marks are

1

not "famous," and summary judgment should be entered on Count II of the Complaint for trademark dilution.

## BACKGROUND

A full statement of the undisputed material facts has been filed in Weiss's Statement of Material Facts (referred to herein as "SOF").

In summary, Weiss develops, markets and sells financial advisory letters, educational material, seminars, webcasts, TV/Web broadcasts, blogs, software, simulation programs and other resources relating to the financial industry and markets. (SOF 1). One Weiss division is Uncommon Wisdom Daily, which provides newsletters on a variety of investment options. (SOF 1).

Finest Known, organized in 2009, sells rare coins and precious metals (SOF 2). Plaintiff, James DiGeorgia is the Managing Member of Finest Known, which has no employees. (SOF 3-4). Finest Known claims to have published *Superstock Investor* and *Gold and Energy Advisor*, which are online investment advice services that are advertised by direct mail, email, affiliate marketing, media, word of mouth and telemarketing. (SOF 5).

GEOT, organized in 2009, claims to publish two other online investment advice services, *Gold and Energy Options Trader* and *Index Options Trader*, and to advertise in the same way as Finest Known. (SOF 9). DiGeorgia and Plaintiff, Geoffrey Garbacz ("Garbacz"), are Managing Members of GEOT. (SOF 7). GEOT also has no employees. (SOF 8).

On June 25, 2013, Finest Known entered into a Professional Services Agreement with Weiss (June 2013 Agreement), whereby Weiss was granted an exclusive, irrevocable, perpetual license to promote *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader*. (SOF 21, 30, 40 and 49). GEOT was added to the June 2013 Agreement by an amendment to the contract. (SOF 21).

Prior to the June 2013 Agreement, the sales of *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* were moribund. *Superstock Investor* had only 8 subscribers (SOF 20), *Gold and Energy Advisor* had only 367 subscribers (SOF 29), *Gold and Energy Options Trader* had only 21 subscribers (SOF 39), and Options Index Trader had 0 subscribers (SOF 48). To be generous, the publications appealed to a niche market (SOF 18), and generated little to no unsolicited media coverage. (SOF 37).

Finest Known and GEOT's Managing Members freely acknowledge that the *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* marks are descriptive of the services performed. *Superstock Investor* is descriptive of stock investment. (SOF 13). *Gold and Energy Advisor* describes commodities trading and consumer protection. (SOF 24). *Gold and Energy Options Trader* describes the gold and energy options services that the publication provided. (SOF 34). *Options Index Trader* describes the options indexes the publication provides. (SOF 43).

Finest Known and GEOT's Managing Members also freely acknowledge they have no evidence that *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* have acquired secondary meaning. (SOF 14-15, 25-26, 35, 44). Likewise, they freely acknowledge that they have no evidence that the *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* are widely recognized by the general consuming public of the United States as a designation of the source of goods or services for Finest Known or GEOT. (SOF 16, 17, 18, 27, 28, 36, 38, 45-47).

During the course of the June 2013 Agreement, Weiss selected two new marks for Weiss Publications, *Superstock Trader* and *Gold and Energy Investor*. (SOF 53, 63). These marks were descriptive of the services. (SOF 56, 65). Prior to the June 2013 Agreement, Finest Known had never used the *Superstock Trader* and *Gold and Energy Investor* marks in commerce. (SOF 54, 64). The first use of *Superstock Trader* in commerce was March 17, 2014. (SOF 69). The first use of *Gold and Energy Investor* in commerce was at earliest, October 29, 2013. (SOF 55, 62). As with the other marks, it is undisputed that *Superstock Trader* and *Gold and Energy Investor* have not acquired secondary meaning, and are not widely recognized by the general consuming public of the United States. (SOF 57-60, 66-71).

The June 2013 Agreement was terminated in March/April 2015. (SOF 73, DE 1 at ¶ 41). Thereafter, Weiss started selling subscriptions to online investment advice services under the marks, *Superstar Trader*, *Gold and Energy Options Alert* (later changed to *Natural Resources Options Alert*), *Index Options Trader* (later changed to *Options Alert*[1]) and *Natural Resources Investor*. (SOF 74). For its part, Finest Known filed trademark registrations for *Superstock Investor, Superstock Trader, Gold and Energy Advisor* and *Gold and Energy Investor* after the

---

[1] The UWD website reflects the name of Options Alert actually is, *Uncommon Wisdom Daily's Options Alert*. See http://uwoa.uncommonwisdomdaily.com/uncommon-wisdom-dailys-options-alerts.

3

March/April 2015 termination of the June 2013 Agreement, and GEOT did the same for *Gold and Energy Options Trader* and *Options Index Alert*. (SOF 22, 31, 41, 51, 62 and 72).

After registering the trademarks for the first time, Plaintiffs filed this Complaint, asserting two counts under the Lanham Act. In Count I, Plaintiffs alleged that Weiss has used "confusingly similar marks" in violation of 15 U.S.C. § 1125(a) by using (1) *Superstar Trader*, as opposed to *Superstock Trader*, (2) *Gold & Energy Options Alert* (later changed to *Natural Resources Options Alert*), as opposed to *Gold and Energy Options Trader*, (3) *Index Options Trader* (later changed to *Options Alert*), as opposed *Options Index Trader*, and (4) *Natural Resources Investor*, as opposed to *Gold and Energy Investor*. (DE 1, Complaint, ¶¶ 44, 50). In Count II, Defendants alleged that *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* were "famous" marks under 15 U.S.C. § 1125(c) and alleged that Weiss has diluted these "famous" marks by blurring and tarnishment. (DE 1, Complaint, ¶¶ 54-55).[2] Weiss filed a Counterclaim for cancellation of the trademark registrations filed by Finest Known and GEOT for *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader.* (DE 20, ¶¶ 128-34).

During discovery, Plaintiffs have been unable to identify anyone who has been actually confused by Weiss's use of the *Superstar Trader*, *Gold & Energy Options Alert*, *Natural Resources Options Alert*, *Index Options Trader*, *Options Alert* or *Natural Resources Investor* marks used by Weiss since May 2015 (hereinafter referred to as, the "Weiss Marks"). (SOF 77-82). Plaintiffs also have not completed any consumer survey to establish a likelihood of confusion between (1) *Superstar Trader* and *Superstock Trader*, (2) *Gold & Energy Options Alert* (or *Natural Resources Options Alert*) and *Gold and Energy Options Trader*, (3) *Index Options Trader* (or *Options Alert*) and *Options Index Trader*, or (4) *Natural Resources Investor* and *Gold and Energy Investor*. (SOF 83-88). And, Finest Known and GEOT have not identified any inquiries from any customers looking to subscribe to *Natural Resources Options Alert*, *Options Alert*, *Natural Resources Investor*, *Index Options Trader*, *Gold & Energy Options Alert* or *Superstar Trader*. (SOF 89).

---

[2] Plaintiffs had filed state law claims, but those counts previously were dismissed by this Court. (DE 44, Final Order of Dismissal of Counts III-IX). Defendant, Brad Hoppmann, was only sued in Count IX, so he is no longer a party to this action. The parties have stipulated to dismissal of the state law counterclaims, leaving only Count V of the Counterclaim.

4

## STANDARD OF REVIEW

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex v. Catrett*, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," and the United States Supreme Court has held that Fed. R. Civ. P. 56 "should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323-24.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. In response, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admission on file, designate specific facts showing that there is a genuine issue for trial." *Id.* Where the opposing party fails to present specific facts to prove an essential element of his claim, no genuine issue of material fact remains and summary judgment must be entered in favor of the moving party. *Celotex*, 477 U.S. at 324.

In order "to survive summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for his position; indeed, the moving party must make a showing sufficient to permit the jury to reasonably find on his behalf." *Urquilla-Diaz v. Kaplan University*, 780 F. 2d 1039 (11th Cir. 2015).  All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable. *Avenue CLO Fund, Ltd. v. Bank of America*, 723 F. 3d 1287, 1294 (11th Cir. 2013).  Moreover, hearsay statements, even if stated in an affidavit or deposition, cannot be considered. *Futuristic Fences v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1276 (S.D. Fla. 2008).

## ARGUMENT

"To make a claim for infringement for of its service marks, [plaintiff] must show: (1) that its services were entitled to protection and (2) that [the allegedly infringing marks] were identical to those marks or so similar that they were likely to confuse consumers." *Welding Services, Inc. v. Forman*, 509 F. 3d 1351 (11th Cir. 2007). In addition, Plaintiff must show "that it was the first to use the trademark in the same market." *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1353 (S.D. Fla. 1998). Here, Plaintiffs fail to present specific facts to prove all three essential elements of a claim of trademark infringement, necessitating entry of summary judgment in favor of Defendants on Count I of the Complaint.

As further discussed below, Plaintiffs also have not established that their marks are "famous," necessitating summary judgment in favor of Defendants on Count II of the Complaint.

A. **THE MARKS, WHICH ARE DESCRIPTIVE AND HAVE NOT ACQUIRED SECONDARY MEANING, ARE NOT ENTITLED TO PROTECTION AS A MATTER OF LAW**.

As alleged in Weiss's Fifth Affirmative Defense (DE 20, p. 11), *Superstock Investor*, *Superstock Trader*, *Gold and Energy Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* are marks that are merely descriptive, and are not entitled to protection because Plaintiffs cannot establish that these marks acquired secondary meaning.

"A descriptive mark identifies a characteristic for quality of the service or product." *Welding Services*, 509 F.3d at 1358. Pursuant to 15 U.S.C. § 1052(e) and (f), a mark shall be refused registration on the Principal Register if the mark "[c]onsists of a mark which, when used in connection with the goods of the applicant is merely descriptive," unless "a mark used by the applicant has become distinctive of the applicant's goods in commerce." As stated by the United States Supreme Court,

> Marks which are merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected. However, descriptive marks may acquire distinctiveness which will allow them to be protected under the Act. . . . This acquired distinctiveness is generally called "secondary meaning." The concept of second meaning has been applied to actions under § 43(a) [15 U.S.C. § 1125(a)].

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  A descriptive term acquires secondary meaning when "the primary significance of the term in the minds of the consuming public is not the product but the producer."  *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1317 (11th Cir. 2012).

"Appeals courts have held that survey evidence is the most direct and persuasive evidence to establish secondary meaning."  *Vital Pharmaceuticals, Inc. v. American Body Bldg. Products, LLC*, 511 F. Supp. 2d 1303, 1311 (S.D. Fla. 2007) (*citing Sugar Busters, LLC v. Brennan*, 177 F. 3d 258, 269 (5th Cir. 1999)).  Courts consider four factors, in the absence of a consumer survey, to determine whether a mark has acquired secondary meaning, with the fourth factor being the "most telling":

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture.

*Tropic Ocean Airways, Inc. v. Floyd,* 598 Fed. Appx. 608, 612 (11th Cir. 2014) (*citing Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir.1984)). "A high degree of proof is necessary to establish secondary meaning for a descriptive term which suggests the basic nature of the product or service."  *Popular Bank of Florida*, 9 F. Supp. 2d at 1357.

Two cases within the Eleventh Circuit and Southern District of Florida outline the high degree of proof necessary to establish secondary meaning.  In *Popular Bank of Florida*, the plaintiff submitted evidence that it provided banking services in South Florida for over 20 years, spent approximately $2.9 million on advertising, had substantial evidence of increasing awareness of the "Popular Bank" brand through signage, newspaper articles, and customer correspondence, and expert testimony.  *Popular Bank of Florida,* 9 F. Supp. 2d at 1358 (finding secondary meaning).  Conversely, the Eleventh Circuit affirmed summary judgment in favor of the Defendants in a trademark infringement claim, finding "Investacorp" did not acquire secondary meaning where Plaintiff, a financial services company, had used the "Investacorp" mark for five years prior to Defendants' use of "Investcorp," had spent only $100 per month on advertising, and had sparse evidence to suggest the public identified "Investacorp" with

7

Plaintiff's financial services business. *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1525-26 (11th Cir. 1991).

Here, Finest Known and GEOT have conceded, as they must, that the *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* marks are descriptive of the services performed. (SOF 13, 24, 34, 43, 56, 65). Despite this concession, Finest Known and GEOT have no evidence that *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* marks have acquired secondary meaning.

First, with respect to length and manner of use, *Options Index Trader*, *Superstar Trader* and *Gold and Energy Investor* did not make a first sale until after Finest Known and GEOT granted Weiss an exclusive, irrevocable and perpetual license in the June 2013 Agreement. (SOF 48, 50, 55, 62 and 72). Moreover, Finest Known and GEOT only existed since 2009, meaning there was only a four year time period of sales of *Superstock Investor, Gold and Energy Advisor, and Gold and Energy Options Trader* prior to the license to Weiss in 2013. The zero and four year periods of prior use, therefore, is less than the five years that was held insufficient to establish secondary meaning in *Investacorp,* 931 F.2d at 1525-26, and certainly less than the twenty years that was held sufficient to establish secondary meaning in *Popular Bank of Florida*, 9 F. Supp. 2d at 1358.

Second, Plaintiffs have been unable to present any evidence of advertising or promotion other than mere generalities. Plaintiffs were unable to identify specific marketing expenditures for *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* in their Answers to Interrogatories. (SOF 19, 28, 37, 52, 61, 71). To be sure, conclusory allegations of advertising are insufficient to establish secondary meaning. *Floyd*, 598 Fed. Appx. at 611 (conclusory allegation that plaintiff "continuously promoted" the *Tropic Ocean Airways* mark "through substantial advertising and marketing and sales" was insufficient, and complaint was dismissed). Therefore, there is no evidence under this factor to establish secondary meaning. The advertising in this case is closer to the $100 per month that was insufficient to establish secondary meaning in *Investacorp*, 931 F.2d at 1525, than the $2.9 million that was held sufficient to establish secondary meaning in *Popular Bank of Florida*, 9 F. Supp. 2d at 1358. *See also Gift of Learning*

*Foundation, Inc. v. TGC, Inc*., 329 F.3d 792, 801 (11th Cir. 2003) (marketing expenses of $10,000 annually over three years was insufficient to establish secondary meaning for mark).

Third, Plaintiffs have produced no evidence of any efforts to promote a conscious connection in the public's mind between *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* and the Plaintiffs' business. When considering this factor, "the dispositive factor is not the extent of promotional efforts, but their effectiveness." *Vital Pharmaceuticals*, 511 F. Supp. at 1311. As of June 24, 2013 (the day before they licensed the marks to Weiss) *Superstock Investor* had only 8 subscribers (SOF 20), *Gold and Energy Options Trader* only had 21 subscribers (SOF 39), and *Gold and Energy Advisor* only had 367 subscribers. (SOF 29). And, *Options Index Trader*, *Superstar Trader* and *Gold and Energy Investor* had no subscribers at all! Moribund sales figures certainly are not evidence that Finest Known and GEOT promoted a conscious connection in the public minds with the marks. *See, e.g., Gift of Learning*, 329 F.3d at 800 (affirming summary judgment in favor of defendants where there was insufficient evidence to establish that "Drive, Pitch & Putt," a mark that described a golf skills competition, had acquired secondary meaning where competition had only 200 to 300 annual participants over five year period).

Fourth, and "most telling," is that Plaintiffs have no evidence that "the public actually identifies the *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* marks with the Plaintiffs' product or venture. *See, e.g., Gift of Learning*, 329 F.3d at 800 ("Finally, plaintiff lacks any evidence the public associates the mark with [plaintiff's] business."). As may be expected, "[a]ctual identification is best provided by surveys or other quantifiable proof, and, absent such data, it is very difficult to prove." *Gulf Coast Commercial Corp. v. Gordon River Hotel Associates*, 2006 WL 1382072, *10 (M.D. Fla. 2006). All parties acknowledge the publications appeal to a niche market (SOF 18), but, even so, the actual subscriptions for Finest Known and GEOT prior to contracting with Weiss either were *nonexistent* for three products, or between 8 and 367 for three other products. Significantly, Plaintiffs have not disclosed any evidence, including consumer surveys, that *Superstock Investor*, *Gold and Energy Advisor*, *Gold and Energy Options Trader*, and *Options Index Trader* have acquired secondary meaning. (SOF 14-15, 25-26, 35, 44).

9

Therefore, there is no genuine dispute that *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* are descriptive terms that have failed to acquire secondary meaning. No fact-finder reasonably could conclude that "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Miller's Ale House,* 702 F.3d at 1317.

B. **THE WEISS MARKS DO NOT INFRINGE AS A MATTER OF LAW**.

"It is, of course, undisputed that liability under § 43(a) [11 U.S.C. § 1125(a)] requires proof of likelihood of confusion." *Two Pesos,* 505 U.S. at 769. In the Eleventh Circuit, summary judgment is appropriate if the plaintiff fails to come forward with sufficient evidence of likelihood of confusion to warrant a trial on the issue:

> Likelihood of confusion is assessed by examining seven factors: (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public.

*Welding Services*, 509 F.3d at 1360 (granting summary judgment in favor of defendant because plaintiff "has not come forward with sufficient proof of likelihood of confusion to warrant a trial of the issue"). Actual confusion is the consideration that is entitled to the most weight, *Caliber Automotive Liquidators, Inc. v. Premier Chrysler Jeep Dodge, LLC*, 605 F.3d 931, 936 (11h Cir. 2010), "and the best evidence of likelihood of confusion." *Ambrit v. Kraft*, 812 F.2d 1531 (11th Cir. 1986).

First, as shown above, the *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* are <u>descriptive</u> terms that lack inherent distinctiveness. *Popular Bank of Florida*, 9 F. Supp. 2d at 1356 ("Distinctive marks are fanciful, arbitrary, or suggestive, and are deserving of protection.") And, as shown above, there is no evidence that *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* have acquired secondary meaning. Indeed, when a mark contains very common formative components, "[t]he likelihood of prospective use by competition is high, and

it is very likely that competitors will need to use these terms," making the mark "relatively weak in its descriptiveness."  *Gulf Coast*, 2006 WL 1382072, *7 (*citing Investacorp*, 931 F.2d at 1523).  Here, it is very likely that competitors in the financial industry will need to use descriptive terms like investor, income, trader, advisor, stock, options, gold and energy.  Even use of the term, superstar, is not unusual since Weiss Research has published another publication, *Income Superstars*, for over six years.[3]

Second, visual comparisons show that the marks are not similar.  Indeed, Plaintiffs admit that Weiss' use of the mark, *Superstar Trader*, was "entirely different" than *Superstock Trader* (SOF 75), and that Weiss's use of the mark, *Natural Resources Options Alert*, was "entirely different" than *Gold and Energy Options Trader*.  (SOF 76).  Likewise, Weiss's use of the mark *Natural Resources Investor* is dissimilar from *Gold and Energy Investor*, and Weiss's use of *Options Alert* is dissimilar from *Options Index Trader* because, in each comparison, two of the three words are <u>missing</u> from the allegedly infringing mark.  That leaves two names that temporarily were used by Weiss only for a "few days" (DE 1, Complaint, ¶ 44), *Gold and Energy Options Alert* and *Index Options Trader*, neither of which are identical to the *Gold and Energy Options Trader* and *Options Index Trader* marks.

Third, the goods and services offered are not identical.  "This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties."  *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1338 (11th Cir. 1999).  Finest Known's Articles of Organization expressly provides that the purpose of the company is to sell rare coins and precious metals.  (SOF 2).  Conversely, Weiss offers educational material, seminars, webcasts, TV/Web broadcasts, blogs, software, simulation programs and other resources relating to the financial industry and markets.  (SOF 1).

Fourth, there are material differences in the actual sales methods, with Finest Known and GEOT relying primarily on traditional direct marketing and staying "behind the times" with respect to modern e-mail or digital marketing.  (SOF 5, 9).

Fifth, there are dissimilarities of advertising methods because, as shown above, Finest Known and GEOT have been unable to identify any specific advertising that took place prior to the June 2013 Agreement.  (SOF 19, 28, 37, 52, 61, 71).

---

[3] See https://www.weissresearchissues.com/income-superstars.

Sixth, there is no evidence of intent to misappropriate the good will of Finest Known and GEOT. Indeed, there would be little motivation to do so when those companies had almost no subscribers upon signing the June 2013 Agreement.

Seventh, there is no evidence of actual confusion. Finest Known and GEOT have been unable to identify any consumers who were actually confused by the use of the Weiss marks. (SOF 77-82). Plaintiffs also have not completed any consumer surveys to establish a likelihood of confusion. (SOF 83-89).

Therefore, Plaintiffs have failed to establish the essential element of likelihood of confusion to prove a claim of trademark infringement, necessitating entry of summary judgment in favor of Defendants on Count I of the Complaint

C. **PLAINTIFFS DO NOT OWN THE SUPERSTOCK TRADER AND GOLD AND ENERGY INVESTOR MARKS**.

With respect to the *Superstock Trader* and *Gold and Energy Investor* marks, Finest Known must show "that it was the first to use the trademark in the same market." *Popular Bank of Florida*, 9 F. Supp. 2d at 1353 ("The right to the exclusive use of a particular mark or name as a trademark is ordinarily founded on priority of appropriation.").

It is undisputed that, prior to the June 2013 Agreement, Finest Known had never used the *Superstock Trader* and *Gold and Energy Investor* marks in commerce. (SOF 54). The first use of *Superstock Trader* in commerce was March 17, 2014. (SOF 72). The first use of *Gold and Energy Investor* in commerce was on October 29, 2013. (SOF 55, 62). This was during the course of the June 2013 Agreement when Weiss was publishing those newsletters. (SOF 53, 55, 63). Indeed, Weiss selected two new marks for Weiss Publications, *Superstock Trader* and *Gold and Energy Investor*. (SOF 53, 63).

Therefore, because it is undisputed that <u>Weiss</u> (not Finest Known) was the first to use the *Superstock Trader* and *Gold and Energy Investor* marks in the financial industry and markets, Finest Known has failed to prove an essential elements of a claim of trademark infringement. Finest Known cannot sue Weiss under the theory that *Superstar Trader* infringes on the *Superstock Trader* mark when Finest Known was not the first to use the *Superstock Trader* mark in the market. Likewise, Finest Known cannot sue Weiss under the theory that the *Natural Resources Investor* mark infringes on the *Gold and Energy Investor* mark when Finest Known was not the first to use the *Gold and Energy Investor* mark in the market. Summary judgment

12

should be entered in favor of Weiss with respect to Plaintiffs' claims for infringement with respect to the *Superstock Trader* and *Gold and Energy Investor* marks.

### D. THE SENIOR MARKS ARE NOT "FAMOUS," MEANING SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT II FOR TRADEMARK DILUTION.

Title 15 U.S.C. § 1125(c) provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person, who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." The statute further provides that "a mark is famous if it is *widely recognized by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." *Id.* (emphasis added).

The leading commentator on trademarks states the requirement that a mark be "widely recognized by the general consuming public of the United States" is a "rigorous and demanding test" that at minimum would require "75% of the general consuming public of the United States" to recognize the mark as a designation of source of the services of the mark's owner. J. Thomas McCarthy, *McCarthy's on Trademark and Unfair Competition*, § 24:106 (2008). To be sure, this Court has held that "trademark dilution claims are limited to truly famous marks such as Budweiser beer, Camel cigarettes and Barbie Dolls." *Brain Pharma LLC v. Scalini*, 858 F. Supp. 1349, 1357 (S.D. Fla. 2012) (dismissing Complaint that alleged "BPI" mark was famous). Therefore, court routinely dismiss, grant summary judgment or enter judgment in favor of the defendant on trademark dilution claims where the mark is not famous. *See, e.g., HBP, Inc. v. American Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1338 (M.D. Fla. 2003) (holding that "Daytona" mark for racing boats was not famous); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1270 (S.D. Fla. 1999) (holding that Carnival's "Fun Ship" mark was not famous); *Michael Caruso and Co., Inc. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1463 (S.D. Fla. 1998) (mark "Bongo" for women's apparel held not to be famous, distinguishing "Bongo" from truly famous marks such as "Buick" and "Kodak").

The Lanham Act requires a court to consider four factors to determine whether a mark is famous:

      (i)      The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

      (ii)      The amount, volume, and geographic extent of sales of goods or services offered under the mark.

      (iii)      The extent of actual recognition of the mark.

      (iv)      Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

11 U.S.C. § 1125(c). The fourth factor is not considered relevant because "one cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register. On the other hand one could logically infer lack of fame from a lack of registration. . . ." *McCarthy on Trademarks and Unfair Competition* at 24:106.

    As to the first factor, "duration, extent and geographic reach of advertising and publicity of the mark," courts have held that even usage of a mark by the plaintiff for 15 years "has been generally held an insufficient amount of time for a mark to become famous." *Michael Caruso and Co.*, 994 F. Supp. at 1463 (citing other federal cases where nine year and forty year usage of marks were insufficient to establish the marks were famous). Here, as stated above, *Options Index Trader*, *Superstar Trader* and *Gold and Energy Advisor* were first used in the 2013-2014 time period. (SOF 48, 50, 51, 54, 55, 62, 63, 64, 69). And, Finest Known and GEOT, having been organized in 2009 (SOF 2, 6), could only have been using the *Superstock Investor*, *Gold and Energy Advisor* and *Gold and Energy Trader* marks for four years prior to the June 2013 Agreement licensing the marks to Weiss. Plaintiffs also have not identified specific marketing expenditures for *Superstock Trader, Superstock Investor, Gold and Energy Investor, Gold and Energy Advisor, Gold & Energy Options Trader,* and *Options Index Trader* that would qualify the mark as "famous." (SOF 19, 28, 37, 52, 61, 71).

    As for the second factor, "the amount, volume and geographic extent of sale of goods and services," sales by Finest Known and GEOT of *Options Index Trader*, *Superstar Trader* and *Gold and Energy Investor* were <u>non-existent</u> prior to the June 2013 Agreement with Weiss (SOF 52, 54, 64), and *Superstock Investor* had only 8 subscribers (SOF 20), *Gold and Energy Options Trader* only had 21 subscribers (SOF 39), and *Gold and Energy Advisor* only had 367

subscribers. (SOF 29). Naturally, a paltry volume of sales do not establish the marks are "famous" like Budweiser beer, Camel cigarettes, or Barbie Dolls.

As for the third factor, "the extent of actual recognition of the mark," Finest Known has not identified any evidence that *Superstock Investor, Superstock Trader, Gold and Energy Advisor* or *Gold and Energy Investor* are widely recognized by the general consuming public of the United States as a designation of the source of goods or services for Finest Known. (SOF 17, 28, 60, 70). Likewise, GEOT has not identified any evidence that *Gold and Energy Options Trader* and *Options Index Trader* are widely recognized by the general consuming public of the United States as a designation of the source of goods or services for GEOT. (SOF 38, 46). Moreover, no consumer surveys have been completed by Finest Known or GEOT to establish that *Superstock Investor, Superstock Trader, Gold and Energy Advisor, Gold and Energy Investor, Gold and Energy Options Trader* and *Options Index Trader* are famous marks. (SOF 16, 27, 36, 45, 59).

Therefore, Plaintiffs have not established the marks are "famous," which is an essential elements of a claim of trademark dilution, and summary judgment should be granted in favor of Defendants on Count II of the Complaint.

## CONCLUSION

For the foregoing reasons, this Court should grant final summary judgment in favor of the Defendants on Counts I and II of the Complaint and Count V of the Counterclaim, and pursuant to the Court's authority under 15 U.S.C. §§ 1119 and 1064(3), cancel the registrations filed by Finest Known for *Superstock Investor, Superstock Trader, Gold and Energy Advisor,* and *Gold and Energy Investor,* and the registrations filed by GEOT for *Gold and Energy Options Trader* and *Options Index Trader*, which are attached to the Statement of Material Facts as Exhibit 7 through 12.

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 24, 2015, I electronically filed the foregoing Motion for Final Summary Judgment and Incorporated Memorandum of Law with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ *Michael W. Marcil*
**G. JOSEPH CURLEY**
Florida Bar. No. 0571873
E-mail: gcurley@gunster.com
MICHAEL W. MARCIL
Florida Bar No.: 0091723
E-mail: mmarcil@gunster.com
JOHN W. TERWILLEGER
Florida Bar No: 107095
E-Mail: jterwilleger@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
Telephone:     561-655-1980
Facsimile:     561-655-5677
*Counsel for Defendants*

**SERVICE LIST**
*Finest Known LLC et al. v. Weiss Research, Inc. and Brad Hoppmann*
Case No. 9:15-cv-80773-WJZ


Brian M. Becher, Esq.
Florida Bar No.: 160393
E-Mail: bmbecher@sbwlawfirm.com
Shapiro, Blasi, Wasserman & Hermann, P.A.
777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:  (561) 477-7800
Facsimile:   (561) 477-7722
Co-Counsel for Plaintiffs

Charles J. Hecht, Esq. (Admitted Pro Hac Vice)
E-Mail:  hecht@whafh.com
Daniel Tepper, Esq. (Admitted Pro Hac Vice)
E-Mail:  tepper@whafh.com
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, N.Y.  10016
Telephone:  (212) 545-4600
Facsimile:   (212) 545-4653
Co-Counsel for Plaintiffs